# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PATRICK KARNEY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CITY OF NAPERVILLE, T.J. BOOGERD, ) <br> JOHN DOE OFFICER #2, and JOHN DOE ) <br> OFFICER #3, ) <br> ) <br> Defendant. ) | Case No: 15 C 4608 <br><br> Judge Thomas M. Durkin |

## MEMORANDUM OPINION AND ORDER

On May 26, 2015, Plaintiff Patrick Karney filed this Section 1983 action seeking damages and injunctive relief against Defendant "Naperville" for alleged deprivations of his constitutional rights in connection with his arrest on or about May 26, 2013. On July 6, 2015, a summons was issued to the Naperville Police Department, and, on July 29, 2015, the Naperville Police Department filed an appearance through the City of Naperville's Attorney's Office. On August 20, 2015, the Court allowed Karney to file an amended complaint (R. 12), which added as defendants T.J. Boogerd, John Doe Officer #2, and John Doe Officer #3. *See* R. 10-1. Based on the docket, it appears that as of the date of this opinion, Karney has neither served Officer Boogerd nor identified the two John Doe Officers. Therefore, Karney's claims against these defendants are not currently before the Court.

On September 4, 2015, the City Attorney's Office filed a motion to dismiss on behalf of the Naperville Police Department. R. 13. Among other things, the motion

argues that the Naperville Police Department is not properly named as the defendant in this case. That argument is correct. The Naperville Police Department is not a suable entity, but merely a department of the City of Naperville which does not have a separate legal existence. *See Gray v. City of Chi.*, 159 F. Supp. 2d 1086, 1089 (N.D. Ill. 2001) (citing *Jordan v. City of Chi., Dept. of Police*, 505 F. Supp. 1 (N.D. Ill. 1980) (citing *Ellis v. City of Chi.*, 478 F. Supp. 333 (N.D. Ill. 1979)); *Bonilla v. City Council*, 809 F. Supp. 590 (N.D. Ill. 1992))). The Court therefore dismisses Karney's claims against the Naperville Police Department, and orders that the City of Naperville be joined in its place as the real party in interest. *See* Fed. R. Civ. P. 19(a)(2). The Court will refer to the moving defendant hereafter as the City of Naperville.[1]

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7,* 570 F.3d 811, 820 (7th Cir.), *cert. denied,* 558 U.S. 1049 (2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While "detailed factual

---

[1] The Naperville Police Department is stricken from the caption of this case, and the City of Naperville substituted. *See Averhart v. City of Chi.,* 114 Fed. App'x 246, 247 (7th Cir. 2004); *Gray*, 159 F. Supp. 2d at 1089 (same).

2

allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel,* 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal,* 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann,* 707 F.3d at 877.

## BACKGROUND

Karney alleges that on or about May 26, 2013, he was traveling to his girlfriend's house, when, at around 10:30 p.m., he stopped at a McDonald's restaurant in Naperville, Illinois. R. 10-1 at 3 (¶¶ 11-13). He went through the drive thru at the McDonald's, purchased food, and parked in the McDonald's parking lot. *Id.* (¶ 14). He left his vehicle running, ate his food, and listened to talk radio. *Id.* (¶ 15). At some point, he fell asleep in the parking lot. *Id.* at 4 (¶ 15). At about 1:30 a.m., he was awakened by someone knocking on the window, and saw police officers looking in at him through the front windows on the driver and passenger sides of the car. *Id.* (¶¶ 16-19). Karney also saw three police vehicles that had "blocked" his vehicle. *Id.* (¶ 19). The officer looking in through the driver's side window asked Karney if he was alright and what he was doing there. *Id.* (¶ 20). Karney explained

3

that he had fallen asleep while listening to talk radio. *Id.* (¶ 22). The officer asked Karney for his driver's license and insurance information. *Id.* (¶ 23). Karney heard a voice through the police radio telling the officer "he's clear." *Id.* (¶ 25). Karney alleges that the officers then scanned the inside of his car with their flashlights and asked if he had anything illegal in the car. *Id.* at 5 (¶ 26). Karney responded no, and one of the officers asked him if he had been drinking, to which Karney also responded no. *Id.* (¶ 27). The officers then administered several field sobriety tests, after which, they placed Karney under arrest for suspicion of DUI. *Id.* (¶¶ 29-34).

Karney alleges that "at no time [did] any Officer indicate that there [was] a smell of alcohol on [his] person, or that an open container of any alcohol was visible." *Id.* (¶ 30). Karney also alleges that he advised the officers during the field sobriety tests that he suffered from inflamed sciatica in his back and could not physically balance on one foot in dress shoes with his condition. *Id.* (¶ 32). After being placed under arrest, Karney alleges that the officers "search[ed] his car based on the false allegation of DUI," and that no open alcohol, drugs, or other contraband was found. *Id.* (¶¶ 35-36). The officers then searched the trunk of the car, where they found and seized a duffle bag. *Id.* at 5-6 (¶ 37). Karney alleges he was transported to the police station and administered a breathalyzer, which yielded a result of 0.00. *Id.* at 6 (¶ 39).

Karney alleges that at a criminal hearing stemming from his arrest, one of the officers testified he approached Karney's vehicle out of concern because he saw Karney sleeping or seemingly unconscious. *Id.* at 7 (¶ 52). Karney alleges that he

4

testified at the hearing that he told the officers he was fine. *Id.* (¶ 53). Karney alleges that, at the end of the hearing, the trial judge in the criminal matter ruled that once he (Karney) told the officers he was fine, the officers' "civic duty was in fact done, and as soon as [the officers] took his [Karney's] license and had him blocked in with the squad cars, it was an illegal search and seizure." *Id.* (¶ 55).

## ANALYSIS

### A. KARNEY'S SECTION 1983 CLAIMS AGAINST THE CITY OF NAPERVILLE.

Section 1983 does not itself create or establish any federally protected rights. Instead, it authorizes private parties to enforce their federal constitutional rights against municipalities, state and local officials, and other defendants who acted under color of state law. *See* 42 U.S.C. § 1983. To state a Section 1983 claim, the plaintiff must allege a deprivation of a federal right, and that the person who deprived the plaintiff of that right acted under color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015). In addition, if the plaintiff is seeking to establish municipal liability, he must show that the deprivation of his federal right was attributable to the enforcement of a municipal policy, practice, or decision of a final municipal policy maker. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Karney alleges Section 1983 claims against the City of Naperville based on (1) violation of his Fourth Amendment[2] right to be free from unlawful arrests

---

[2] The amended complaint bases the alleged constitutional violations on the Fourth Amendment, as well as the "Fourteenth Amendment rights to equal protection."

("Count One"); (2) violation of his Fourth Amendment right to be free from illegal searches and seizures ("Count Two"); and (3) false imprisonment ("Count Six" [sic-Five]). Karney alleges *Monell* liability against the City of Naperville based on its alleged failure to properly train and supervise the arresting officers ("Count Three"). The City of Naperville moves to dismiss Karney's Section 1983 claims against it based on Karney's failure to plead facts sufficient to support *Monell* liability.[3]

*Monell*, 436 U.S. at 694, holds that a municipality is not liable under Section 1983 unless the constitutional violations at issue are caused by a municipal policy or custom. "The 'official policy' requirement was intended to distinguish acts of the

---

R. 10-1 at 10-11. However, the Fourth Amendment applies to the States through the operation of the Due Process Clause of the Fourteenth Amendment, not the Equal Protection Clause. *See Mapp v. Ohio*, 367 U.S. 643, 650 (1961).

[3] The City of Naperville also gives an additional reason why Karney's Section 1983 claim based on false imprisonment should be dismissed. According to the City, Karney's Section 1983 claim based on false imprisonment claim is duplicative of his Section 1983 claim based on the Fourth Amendment's prohibition against false arrests. R. 14 at 9-10. But that is not necessarily so, because Karney alleges the police officers "blocked" him in the parking lot using their patrol cars thereby preventing him from leaving prior to the questioning that led to his arrest. But since he was sleeping, it's not at all clear he *tried* to leave before the questioning began. In any event, these facts might support a claim for false imprisonment that is separate from Karney's Fourth Amendment false arrest claim. But the issue then becomes whether a tort claim for false imprisonment based on these facts amounts to a constitutional tort for purposes of Section 1983. *See Newsome v. McCabe*, 256 F.3d 747, 750-51 (7th Cir. 2000). The answer is at least doubtful. *See Baker v. McCollan,* 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law," and "false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a [government] official"). Nevertheless, neither party has addressed this issue, and the Court therefore declines to do so as well.

6

*municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original). "Misbehaving employees are responsible for their own conduct[;] 'units of local government are responsible only for their policies rather than misconduct by their workers.'" *Lewis v. City of Chi.*, 496 F.3d 645, 656 (7th Cir. 2007) (quoting *Fairley v. Fermaint*, 482 F.3d 897, 904 (7th Cir.), *cert. denied*, 552 U.S. 824 (2007)). "[A] plaintiff may demonstrate the existence of municipal policy or custom in one of three ways: proof of an express policy causing loss, a widespread practice constituting custom or usage that caused the loss, or causation of the loss by a person with final policymaking authority." *Kujawski v. Bd. of Comm'rs of Bartholomew Cty., Ind.*, 183 F.3d 734, 737 (7th Cir. 1999). Karney does not allege any facts that would support a *Monell* claim under either the first or third categories. Instead, Karney attempts to rely on the second category concerning a widespread practice constituting a custom or usage.

For Karney to show that the alleged customs were attributable to the City of Naperville and thus had the force of law, he must show that City policymakers "were 'deliberately indifferent as to [their] known or obvious consequences.'" *Gable v. City of Chi.,* 296 F.3d 531, 537 (7th Cir. 2002) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 406–07 (1997)). "In other words, they must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293,

7

303 (7th Cir.), *cert. denied*, 562 U.S. 1061 (2010). "Therefore, in situations where rules or regulations are required to remedy a potentially dangerous practice, the [City's] failure to make a policy is also actionable. *Id.* (citing *Sims v. Mulcahy,* 902 F.2d 524, 543 (7th Cir.1990) (quoting *Jones v. City of Chi.,* 787 F.2d 200, 204–05 (7th Cir.1986))). The Seventh Circuit, however, has not "adopt[ed] any bright-line rules defining a 'widespread custom or practice.'" *Thomas*, 604 F.3d at 303. In fact, "there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, except that it must be more than one instance, or even three." *Id.* (quoting *Cosby v. Ward*, 843 F.2d 967, 983 (7th Cir. 1988), and *Gable,* 296 F.3d at 538) (internal quotation marks omitted). The general principle, however, is that "the plaintiff must demonstrate that there is a policy at issue rather than a random event." *Id.* The policy may be implicit, or it may take the form of "a gap in expressed policies, or a series of violations to lay the premise of deliberate indifference." *Id.* (citations omitted). But "[b]eyond these threshold requirements, the jury must make a factual determination as to whether the evidence demonstrates that the [City] had a widespread practice that [caused] the alleged constitutional harm." *Id.* (citing *Woodward v. Corr. Med. Serv. of Ill., Inc.,* 368 F.3d 917, 928 (7th Cir. 2004)).

The issue in this case is preliminary to the one before the *Thomas* court, which addressed the standards for *Monell* liability on a post-verdict motion for judgment as a matter of law. The issue here is whether Karney has alleged sufficient facts to move beyond the pleadings stage on his *Monell* liability claim against the City of Naperville. The Court holds that he has not. To adequately

8

allege a *Monell* claim, Karney must "'plead factual content that allows the Court to draw the reasonable inference' that the [defendant] maintained a policy, custom, or practice" that contributed to the alleged violation. *McCauley v. City of Chi.,* 671 F.3d 611, 618 (7th Cir. 2011) (quoting *Iqbal,* 556 U.S. at 678). Karney has not done so. He alleges in only a conclusory fashion that the City of Naperville violated his Fourth and Fourteenth Amendment rights "by failing to properly train and supervise its employees as to these rights." R. 10-1 at 11 (¶ 77).[4]

"[I]t is necessarily more difficult for a plaintiff to demonstrate an official policy or custom based only on his own experience because what is needed is evidence that there is a true municipal policy at issue, not a random event." *Grieveson v. Anderson,* 538 F.3d 763, 774 (7th Cir. 2008). For this reason, courts in this district generally dismiss *Monell* claims in which "[a]ll of the allegations in the Complaint pertain exclusively to [the plaintiff]." *Davis v. Metro. Pier & Exposition Auth.,* 2012 WL 2576356, at *12 (N.D. Ill. July 3, 2012); *see also Lewis v. Cnty. of Cook,* 2011 WL 839753, at *14 (N.D. Ill. Feb. 24, 2011) (dismissing *Monell* claim because the plaintiff "does not allege facts supporting retaliatory conduct against anyone other than herself"); *Travis v. City of Chi.*, 2012 WL 2565826, at *5 (N.D. Ill. June 29, 2012) ("although [the plaintiff] states that he himself made complaints, he does not identify any other people who complained to the City").

---

[4] *See also id.* (¶ 77(a)) (defendant failed "to take proper measures to train officers and ensure that the training is implemented during real time situations"); *id.* (¶ 77(b)) (defendant failed "to take prompt and effective steps to eradicate illegal searches, seizures and false arrests and prevent their recurrence and address their effects").

9

Similarly, here, the Court cannot reasonably infer that a failure to train caused Karney's alleged constitutional injuries based solely on the factual allegations in the complaint, which relate only to his individual experience. *See Hardy v. Wexford Health Sources, Inc.*, 2015 WL 1593597, at *15 (N.D. Ill. Apr. 2, 2015); *Velazquez v. Williams*, 2015 WL 4036157, at *3-4 (N.D. Ill. June 30, 2015). Karney's sole allegations arguably relating to others include the allegations that the Naperville Police Department has (1) failed "to take steps to protect the Plaintiff as necessary, including failing to properly supervise Officers and prevent them from violating the constitutional rights of Plaintiffs *and others*"; (2) failed "to provide additional trainings in light of *complaints* filed against the police department for abuses including but not limited to unwarranted stops, seizures and illegal arrests; and (3) "engaged in a pattern of illegal searches and seizures in the past as demonstrated *by their own reports.*" R. 10-2 at 11, ¶¶ 77(c), 77(d), 79 (emphasis added). These allegations, however, while suggestive of other similar incidents, are nevertheless insufficient because they, too, are conclusory. To survive a Rule 12(b)(6) motion, Karney would have to provide some factual content to make these conclusory allegations both relevant and plausible. *See, e.g., Liska v. Dart*, 60 F. Supp. 3d 889, 905 (N.D. Ill. 2014) (plaintiff's allegations "merely assert[ ] that what allegedly occurred to Liska is demonstrative of a widespread custom; a "conclusory allegation of the existence of a widespread custom is insufficient to support a *Monell* claim"); *White v. City of Chi.,* 2014 WL 958714, at *3 (N.D. Ill. Mar. 12, 2014) (dismissing *Monell* claim against the City because "Plaintiff merely

alleged that the City engaged in a 'widespread practice' without providing any factual basis for that allegation"); *Falk v. Perez*, 973 F. Supp. 2d 850, 864 (N.D. Ill. 2013) (dismissing *Monell* claim because "[t]he single incident that Plaintiff successfully alleges is not sufficient to satisfy the requirements to plead a *Monell* claim under *Twombly* and *Iqbal*").

In short, as currently alleged, nothing about Karney's personal experience, or about the alleged complaints and reports concerning situations other than Karney's, plausibly suggests that the arresting officers were acting pursuant to a policy, custom, or practice of the City of Naperville. Therefore, Karney's Section 1983 claims against the City of Naperville as alleged in Counts One, Two, Three, and Six [sic Five] are dismissed.

### B. STATE LAW IIED CLAIM.

The City of Naperville also argues that Karney's claim for intentional infliction of emotional distress ("IIED") (Count Four) is time barred. However, the City of Naperville is not named as a defendant in Karney's IIED claim. Therefore, it does not have standing to move to dismiss that claim.

### C. MOTION TO FILE SECOND AMENDED COMPLAINT.

Karney seeks leave to file a second amended complaint. *See* R. 20. The changes to the first amended complaint proposed by Karney's proffered second amended complaint [R. 20-2] do not correct the *Monell* pleading deficiencies identified above. Accordingly, Karney's motion to amend his complaint is denied without prejudice. Karney is granted leave to file an additional amendment to his

complaint if he has a good faith basis for believing he can correct the pleading deficiencies of his *Monell* claims.

## CONCLUSION

For the foregoing reasons, the City of Naperville's motion to dismiss [R. 13] is granted as to Karney's claims against the City of Naperville only and denied as to the IIED claim against the individual officer defendants. Karney's Section 1983 claims against the City of Naperville, as alleged in Counts One, Two, Three and Six [sic Five]) of the amended complaint (R. 10-1) are dismissed without prejudice.

In addition, Karney's motion to amend his complaint [R. 20] is denied without prejudice. Karney shall have thirty days to file a new amended complaint. If, after thirty days, Karney has not filed an amended complaint, then Karney's Section 1983 claims against the City of Naperville will be dismissed with prejudice. Any amended complaint Karney files going forward shall name the City of Naperville as the proper *Monell* defendant.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: October 22, 2015

12