# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

|                                          |     |                          |
|------------------------------------------|-----|--------------------------|
| PATRICK KARNEY,                          | )   |                          |
|                                          | )   |                          |
| Plaintiff,                               | )   | Case No: 15 C 4608       |
|                                          | )   |                          |
| v.                                       | )   | Judge Thomas M. Durkin   |
|                                          | )   |                          |
| CITY OF NAPERVILLE; T.J. BOOGERD;        | )   |                          |
| MATT FLETCHER; and JOHN DOE              | )   |                          |
| OFFICER #3,                              | )   |                          |
|                                          | )   |                          |
| Defendant.                               | )   |                          |

## MEMORANDUM OPINION AND ORDER

Plaintiff Patrick Karney fell asleep in his car in the parking lot of a McDonald's restaurant in the City of Naperville sometime before midnight on May 25, 2013. He alleges that his constitutional rights were violated in connection with his arrest in the early morning hours of May 26, 2013, after he was awakened and questioned by Naperville police officers T.J. Boogerd and Matt Fletcher. Karney filed the Original Complaint, R. 1, on May 26, 2015, and the First Amended Complaint, R. 10-1, on August 6, 2015. By memorandum opinion and order dated October 22, 2015, the Court substituted the City of Naperville as the defendant in place of the Naperville Police Department, and then granted in part and denied in part with leave to replead the "Rule 12(b)(6) Motion to Dismiss," R. 13, filed by the City on September 4, 2015. *See* R. 23 (*Karney v. City of Naperville,* 2015 WL 6407759 (N.D. Ill. Oct. 22, 2015)) (the "October 22, 2015 Order"). Plaintiff filed the Second Amended Complaint on November 20, 2015. R. 46. On December 4, 2015,

the City filed a "Rule 12(b)(6) Motion to Dismiss and Rule 12(f) Motion to Strike." R. 29. On December 18, 2015, Officer Boogerd filed a "Rule 12(b)(5) and 12(b)(6) Motion to Dismiss," R. 32, and, on December 21, 2015, Officer Fletcher filed an "Amended Rule 12(b)(6) Motion to Dismiss," R. 33. By docket entry dated September 30, 2016, the Court denied Defendants' motions. R. 47. By docket entry dated the same day as this memorandum opinion and order, the Court has vacated the September 30 docket entry insofar as it denied Officer Boogerd's motion to dismiss Count Four of the Second Amended Complaint and in its place has granted dismissal as to Count Four instead. The Court now sets forth in this memorandum opinion and order the reasons for the September 30 order and the order entered today that partially vacates the September 30 order.

## BACKGROUND

The facts as alleged in the Second Amended Complaint will not be repeated here as they are nearly identical to the facts alleged in the First Amended Complaint. Those facts are set forth in the Court's October 22, 2015 Order. The only exception are two additional factual allegations in support of Plaintiff's *Monell* claim against the City, which the Court will discuss when addressing the City's motion to dismiss.

## DISCUSSION

### A. OFFICER BOOGERD'S MOTION TO DISMISS

Officer Boogerd raises a number of issues in his motion to dismiss. The Court will address each of these in turn.

## 1. SERVICE OF PROCESS

Officer Boogerd first argues that Plaintiff's claims against him should be dismissed pursuant to Fed. R. Civ. P. 12(b)(5) for failure to serve process within 120 days after the complaint was filed. *See* Fed. R. Civ. P. 4(m).[1] Plaintiff filed this suit on May 26, 2015. Therefore, Officer Boogerd argues, Plaintiff should have served him on or before September 23, 2015, which he failed to do. Boogerd contends that Plaintiff cannot show good cause for his failure to effect timely service on him, and that Plaintiff's claims against him therefore should be dismissed.

The Court rejects Officer Boogerd's service of process argument for two reasons. First, Officer Boogerd uses the date on which this action was filed, May 26, 2015, for the date on which the 120-day period was triggered. But Officer Boogerd was not named as a defendant in the Original Complaint. Instead, Officer Boogerd was first named as a defendant on August 6, 2015, when Plaintiff filed the First Amended Complaint.[2] Pursuant to Rule 4(m), Plaintiff had 120 days from August 6,

---

[1] Rule 4(m) was amended effective December 1, 2015 to shorten the time period for service of process from 120 days to 90 days. The amendment "govern[s] in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending." Order (U.S. Apr. 29, 2015) (available at http://www.supremecourt.gov/orders/courtorders/frcv15%28update%29_1823.pdf). This case was pending when the amendment took effect. It would not be just and practicable, however, to apply the shortened time period of amended Rule 4(m) because the period in which service of process was supposed to have taken and in fact did take place was before the amendment took effect. Therefore, the 120-day period of the pre-amended Rule 4(m) should apply. Neither party contests the applicability of the pre-amended rule.

[2] August 6, 2015 is the date on which Plaintiff filed a motion seeking leave to amend, with the proposed First Amended Complaint attached as an exhibit to that motion. *See* R. 9; R. 10. This Court granted Plaintiff's motion to amend on August 20, 2015. *See* R. 12. But because Plaintiff sought to amend prior to the filing of any

2015 to serve Officer Boogerd, which means he had until December 4, 2015. Plaintiff served Officer Boogerd with a waiver of service of summons, Fed. R. Civ. P. 4(d), on October 23, 2015. *See* R. 32-1 at 3. Boogerd's attorney executed the waiver of service on November 3, 2015, and Plaintiff filed it with the Court on November 4, 2015. *See* R. 25. Plaintiff thus obtained service of process over Officer Boogerd on November 4, 2015. *See* Fed. R. Civ. P. 4(d)(4) ("When the plaintiff files a waiver, proof of service is not required and these rules apply as if a summons and complaint had been served at the time of filing the waiver."). As a result, Plaintiff obtained service over Officer Boogerd prior to the December 4, 2015 deadline.[3]

Second, even if the time for service expired before Plaintiff served Officer Boogerd, the Court still would reject Boogerd's service of process argument. The pre-amendment version of Rule 4(m) states:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without

---

responsive pleading or motion to dismiss, he did not need leave of court to file the First Amended Complaint. *See* Fed. R. Civ. P. 15(a)(1)(B). Therefore, the Court considers the effective date of filing to be the date on which Plaintiff filed the motion to amend with the First Amended Complaint attached thereto.

[3] Officer Boogerd suggests that, notwithstanding his execution and filing of a waiver of service, Plaintiff's service of process on him was defective because Plaintiff never obtained the issuance of a summons. Because Officer Boogerd executed a waiver of service, however, a summons was not required. *See* Fed. R. Civ. P. 4, advisory committee notes, 1993 amendment, *The Caption of the Rule* ("Unless service of the summons is waived, a summons must be served whenever a person is joined as a party against whom a claim is made."); Fed. R. Civ. P. 4, advisory committee notes, 1993 amendment, *Subdividsion (d)* ("It is hoped that, since transmission of the notice and waiver forms is a private nonjudicial act, does not purport to effect service, and *is not accompanied by any summons* or directive from a court, use of the procedure will not offend foreign sovereignties . . . .") (emphasis added).

> prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Boogerd argues that Plaintiff cannot establish "good cause" for an extension under Rule 4(m), and contends that the Seventh Circuit has "counseled against retroactive extensions of time where a plaintff's failure to serve a defendant is caused by his lack of diligence." R. 32-1 at 4 (citing *Dumas v. Decker*, 556 Fed. App'x 514, 515 (7th Cir. 2014)). But the Court need not decide whether Plaintiff can show good cause for failing to effect service within the 120-day period because Rule 4(m) preserves the Court's discretion to extend the deadline for service of process even without a showing of good cause. *See Troxell v. Fedders of N. Am., Inc.,* 160 F.3d 381, 383 (7th Cir. 1998) ("Even if a plaintiff does not establish good cause, the district court may in its discretion grant an extension of time for service."). As the advisory notes explain, Rule 4(m) "authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown. Such relief . . . may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service." Fed. R. Civ. P. 4, advisory committee notes, 1993 amendment, *Subdivision (m)*.[4]

---

[4] Citing to *McDonald v. United States*, 898 F.2d 466, 468 (5th Cir. 1990), and *In re Cooper*, 971 F.2d 640, 641 (11th Cir. 1992), Boogerd argues that "[d]ismissal for delayed service or process is not left to the general discretion of the district court but, rather, is mandatory unless good cause is shown." R. 32-1 at 4. That argument is incorrect. *See Stanley v. Martin*, 2013 WL 331267, at *3 (N.D. Ill. Jan. 29, 2013) (noting that the *McDonald* and *Cooper* cases were decided prior to the 1993

"[D]istrict courts are permitted to take factors like a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service into account" in deciding whether to exercise discretion to allow relief from the 120-day rule. *Troxell*, 160 F.3d at 383l; *see United States v. McLaughlin*, 470 F.3d 698, 701 (7th Cir. 2006) (noting the "wisdom of Rule 4(m) in allowing a judge to excuse a delay in service even if the plaintiff has no excuse at all"). Officer Boogerd argues that the only factor the Court should consider is whether Plaintiff exercised due diligence in attempting to serve him. But even if the Court were to resolve in favor of Boogerd all factual disputes presented by the parties in their briefing concerning Plaintiff's counsel's diligence (or, in Boogerd's view, lack thereof), the Court still can exercise its discretion to grant an extension in Plaintiff's favor. Although a district court is not required to excuse untimely service, the Seventh Circuit expects most district courts to consider the balance of hardships when determining whether to dismiss a complaint for lack of timely service. As the Seventh Circuit has explained:

> Where as in this case the defendant does not show any actual harm to its ability to defend the suit as a consequence of the delay in service, where indeed it is quite likely that the defendant received actual notice of the suit within a short time after the attempted service, and where moreover dismissal without prejudice has the effect of dismissal with prejudice because the statute of limitations has run since the filing of the suit * * * most district judges probably would exercise lenity and allow a late service, deeming the plaintiff's failure to make timely service excusable by virtue of the balance of hardships.

---

amendments to the federal rules, "which resulted in current Rule 4(m)," under which the district court "has the discretion to grant an extension, even in the absence of good cause").

*Coleman v. Milwaukee Bd. of Sch. Directors*, 290 F.3d 932, 934 (7th Cir. 2002).

The Court concludes that the balance of hardships in this case tips in favor of excusing late service, even if Plaintiff's counsel acted less than diligently (which the Court does not decide here). Plaintiff's delay in serving Boogerd was not so great that the Court can infer any actual harm to his ability to defend this suit, and in fact Boogerd has not argued that he suffered any prejudice. "When delay in service causes zero prejudice to the defendant or third parties (or the court itself), the granting of extensions of time for service, whether before or after the 120–day period has expired, cannot be an abuse of discretion." *McLaughlin*, 470 F.3d at 701. Moreover, it is likely that Officer Boogerd received actual notice of the suit within a short time after the case was filed because Plaintiff served the Naperville Police Department[5] and the same attorney representing the City (originally named as the Naperville Police Department) also is representing Officer Boogerd. The service issue will not cause any further delay in the case because Plaintiff successfully obtained service over Boogerd a little over a month after the 120-day deadline. Finally, dismissal without prejudice pursuant to Rule 4(m) in this case would have the effect of dismissal with prejudice because the statute of limitations ran after Plaintiff filed suit and before Plaintiff served Boogerd. The consequences for Plaintiff if the Court does not allow an extension far outweigh the prejudice to Officer Boogerd if an extension is granted. Given the judicial preference for adjudication on the merits rather than a procedural default, the Court will exercise

---

[5] The City has not contested the adequacy of Plaintiff's service of process on the Naperville Police Department.

its discretion to allow the late service (as an alternative to finding that service was timely).

## 2.    FALSE ARREST CLAIM

Officer Boogerd next argues that Plaintiff's § 1983 claim predicated on a false arrest (Count One) should be dismissed because Plaintiff has failed to plausibly allege he was arrested without probable cause. "Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). Plaintiff alleges facts that would support a claim that Officer Boogerd lacked probable cause to arrest him for driving under the influence of alcohol, and Officer Boogerd appears to concede as much. *See* R. 32-1 at 6 ("Plaintiff's allegations might support a claim that an arrest for DUI-Alcohol was without probable cause"). But Boogerd also says that while it is "true" that "there was no probable cause to arrest Plaintiff for driving while impaired by alcohol," it "is also completely irrelevant," R. 41 at 6, because Plaintiff was not arrested for driving under the influence of alcohol. Instead, Boogerd claims, Plaintiff was arrested for driving while under the influence of drugs and for driving on a suspended driver's license. *Id.*

The complaint alleges that the police officers told Plaintiff he was under arrest for suspicion of driving while under the influence of alcohol. R. 46 at 5 (¶ 34).[6] Boogerd asks the Court to make a factual finding contrary to this allegation,

---

[6] The complaint uses the term "DUI," which can mean driving under the influence of either alcohol or some other drug. But the allegations make clear that Plaintiff

namely, that the reasons for Plaintiff's arrest was suspicion of driving while under the influence of drugs and driving with a suspended license. He attaches to his motion to dismiss certain documents to prove that Plaintiff was charged with these two offenses, which he asks the Court to judicially notice. The documents include state court documents showing that Plaintiff was charged with driving under the influence of drugs and driving without a valid license. In addition, Boogerd attaches a copy of Plaintiff's driving record generated by the Illinois Secretary of State, which Boogerd contends shows that Plaintiff did not have a valid license or permit at the time of his arrest.

It may very well be, as Officer Boogerd contends, that the documents in question establish what Boogerd say they do and that the Court can in fact take judicial notice of them. But even so, the documents do not definitively establish the reasons for which Plaintiff was arrested, and, more to the point, they do not establish as a matter of law that Boogerd had probable cause to arrest Plaintiff.

To begin with, Officer Boogerd does not explain why it makes any difference that Plaintiff might have been arrested for driving while under the influence of drugs rather than for driving while under the influence of alcohol. The complaint alleges that the only facts known to the arresting officers on which they based their belief that Plaintiff had operated a motor vehicle while under the influence were the facts that he was sleeping in his car and sweating. R. 35 at 4. If Boogerd concedes, as he does, that these facts are insufficient to establish probable cause for an arrest

---

understood the officers to mean he was under arrest for driving while under the influence of alcohol.

for driving under the influence of alcohol, then he also must concede that these facts are insufficient to establish probable cause for an arrest for driving under the influence of drugs. Plaintiff's allegations plausibly suggest that there was nothing about his demeanor, behavior, or conduct that would have given the officers probable cause to conclude that Plaintiff was under the influence of anything, whether alcohol or drugs, on the night of his arrest.

Boogerd also ignores facts alleged in the complaint that support the conclusion that he lacked probable cause to arrest Plaintiff for driving without a valid drivers license, even if one assumes that Plaintiff in fact did not have a valid drivers license. The complaint alleges that the arresting officers asked Plaintiff for his drivers license, that Plaintiff heard one of the officers "run" his name over the radio to validate information, and that Plaintiff overheard a voice on the other end of the radio state "he's clear." R. 46 at 4-5. Even if, as Boogerd contends, Plaintiff did not have a valid drivers license, that fact would not be relevant to the probable cause issue if Boogerd believed otherwise at the time. *See Williams v. Rodriguez*, 509 F.3d 392, 399 (7th Cir. 2007) (probable cause determination turns on the information known to the arresting officer at the time of the arrest). Indeed, the very case cited by Officer Boogerd (R. 32-1 at 7)—*Dyson v. Village of Midlothian*, 2014 WL 584900 (N.D. Ill. Feb. 14, 2014)—makes this point. In *Dyson*, the plaintiff alleged that the arresting officer pulled his car over though the officer had no reason to believe that the plaintiff had committed or was committing a crime, that the officer asked the plaintiff for his driver's license, which the plaintiff provided,

and that the officer then handcuffed the plaintiff and took him to the police station where he was issued tickets for, among other things, driving without a license. *Id.* at *1. The plaintiff brought suit under § 1983 alleging false arrest. The officer argued on a motion to dismiss that the plaintiff could not allege that the officer lacked probable cause to arrest him "because records from the Illinois Secretary of State establish that [the] plaintiff's driver's license was suspended on the day he was arrested for driving without a license." *Id.* The court rejected this argument because "[t]he records do not . . . establish that [the officer] *knew* [the] plaintiff's license was suspended, the touchstone of probable cause." *Id.* (emphasis added). Moreover, the court said, "though [the] plaintiff alleges that he gave [the arresting officer] his driver's license, he does not allege that [the arresting officer] took the license back to his squad car or any other fact from which we can infer that [the arresting officer] checked whether [the] plaintiff's license was valid." *Id.* (citation omitted).

Here, like in *Dyson*, the documents attached to Officer Boogerd's motion to dismiss do not establish that Officer Boogerd *knew* that Plaintiff's license was invalid at the time he arrested Plaintiff in the McDonald's parking lot. Having cited *Dyson* in support of his argument for dismissal, Officer Boogerd then attempts to distinguish that case by arguing that, unlike the allegations there, this case includes the allegation that Plaintiff gave Officer Boogerd his license *and* that Officer Boogerd "'r[a]n[ ] Plaintiff's name over the radio to validate [the] information.'" R. 32-1 at 7 (quoting paragraph 24 of Second Amended Complaint).

While this is true, Officer Boogerd ignores the further allegation that Plaintiff "overhear[d] a lady on the other end of the radio state, 'he's clear.'" R. 27-1 at 5 (¶ 25). This allegation raises a disputed issue of fact as to what Officer Boogerd knew about Plaintiff's license at the time the arrest took place in the McDonald's parking lot. The Court cannot resolve that factual issue on a motion to dismiss.

### 3.   UNLAWFUL *TERRY* STOP CLAIM

Officer Boogerd next argues that Plaintiff's § 1983 claim predicated on an unconstitutional investigatory stop (Count Two) should be dismissed because Plaintiff has failed to plausibly allege he was detained without reasonable suspicion. An "investigatory," also known as a *Terry*,[7] stop

> complies with the Fourth Amendment if the brief detention is based on reasonable suspicion that the detained individual has committed or is about to commit a crime. The officers initiating the investigatory stop must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, suggest criminal activity. [I]narticulate hunches will not suffice. However, [r]easonable suspicion is a lower threshold than probable cause and considerably less than preponderance of the evidence. . . . This is an objective standard, based upon the facts available to the officers at the moment of the seizure.

*United States v. Ruiz*, 785 F.3d 1134, 1141 (7th Cir. 2015) (internal quotations and citations omitted).

Officer Boogerd argues that Plaintiff's § 1983 claim based on lack of reasonable suspicion to conduct an investigatory stop is not plausible because Plaintiff was found in the parking lot of a McDonald's restaurant at 3:30 a.m.

---

[7] *Terry v. Ohio*, 392 U.S. 1 (1968).

sleeping behind the wheel of a running motor vehicle. R. 41 at 7. But the two cases cited by Boogerd demonstrate that these facts establish no more than that it was reasonable for the police officers, acting in their community caretaking function, to wake Plaintiff up to check on his status. *See People v. Robinson,* 859 N.E.2d 232, 243 (Ill. App. 2006) (police officer "was acting as a 'community caretaker' by awakening defendant and then asking defendant to produce identification outside of defendant's vehicle"); *People v. Carlson*, 716 N.E.2d 1249, 1251-52 (Ill. App. 1999) (defendant's initial encounter with police officer who approached his parked car, awoke him from sleep, and requested that he step outside and show his driver's license, did not rise to the level of a *Terry* stop but instead was within the officer's community caretaking function).

While *Robinson* and *Carlson* establish that the police officers' initial interaction with Plaintiff might not have violated the Fourth Amendment,[8] the validity of that initial interaction does not insulate the officers' conduct thereafter from further constitutional scrutiny. The question is whether the interaction, though lawfully initiated under the community caretaking doctrine, later "exceeded its lawful purpose and ripened into a de facto" (*Ruiz*, 785 F.3d at 1143) unconstitutional *Terry* stop. *See Best v. Berard*, 837 F. Supp. 2d 933, 939 (N.D. Ill. 2011) ("'[A] seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the

---

[8] The Court says "might not have" because of the factual allegation that Plaintiff woke up to find his car blocked in by the police officers. As noted later in a footnote in this opinion, that allegation, if true, could possibly invalidate what would otherwise have been a lawful community caretaking encounter.

Constitution.' A 'detention following a traffic stop, like any seizure, must satisfy the Fourth Amendment's requirement of reasonableness.'" (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005), and *United States v. McBride*, 635 F.3d 879, 882 (7th Cir. 2011)).

Thus, Boogerd is not entirely correct when he argues that there is no Fourth Amendment violation if an encounter lawfully initiated "yields information that a crime has been committed." R. 41 at 8. That may be an accurate statement if the facts are similar to the two cases cited by Boogerd. In *Robinson*, the police officer testified that, upon waking the defendant up, he observed that the defendant's eyes were dilated, his speech was slurred and mumbled, and a very strong odor of an alcoholic beverage was on his breath. 859 N.E.2d at 244. In *Carlson*, the officer testified that when the defendant rolled down his car window, the officer immediately detected a strong odor of alcohol and saw that the defendant "had trouble locating his license; [ ] had bloodshot eyes; [ ] was unsteady and confused; and [ ] appeared to have wet himself." 716 N.E.2d at 1251. In contrast, the facts as alleged by Plaintiff here plausibly suggest that, upon wakening Plaintiff, the police officers did *not* observe any facts that would make a reasonable person suspicious that Plaintiff was under the influence of any substance. Crediting these allegations, as the Court must, the police officers did not have any basis to go beyond their community caretaking function by subjecting Plaintiff to a field sobriety test. Such a test would be justified only if the police officers' initial interaction with Plaintiff yielded information that aroused reasonable suspicion of a crime. *See Best*, 837

F. Supp. 2d at 940 (citing case law discussing when the facts are sufficient to justify the administration of a field sobriety test). Indeed, Boogerd's argument that nothing more is needed to establish reasonable suspicion of criminal activity other than discovering a driver at 3:30 a.m., in a McDonald's parking lot asleep in a car with the engine running (and sweating), is exactly the sort of argument recently rejected by the Seventh Circuit in *United States v. Paniagua-Garcia*, 813 F.3d 1013, 1014-15 (7th Cir. 2016). In that case, the Seventh Circuit chided the government for "appear[ing] to recognize no limit to the grounds on which police may stop a driver."[9] Accordingly, Boogerd has not presented a sufficient basis for dismissal of Count Two of the Second Amended Complaint.[10]

---

[9] In *Paniagua-Garcia,* a police officer was passing a car driven by the defendant and saw the defendant holding a cellphone in his right hand with his head bent toward the phone. 813 F.3d at 1014. The officer stopped the defendant because, he said, the defendant "appeared to be texting" in violation of a state statute that prohibits texting (but not any other uses of cellphones) while operating a motor vehicle. *Id.* The police officer questioned the defendant at length, eventually asked and received his permission to search the car, and discovered in the search five pounds of heroin concealed in the spare tire in the car's trunk. In the criminal prosecution, the district court upheld the search, ruling that the officer had reasonably believed that the defendant was texting when he initiated the traffic stop. The Seventh Circuit reversed, noting that the government conceded that the defendant was not texting and the police officer "has never explained what created the appearance of texting as distinct from any one of the multiple other—lawful—uses of a cellphone by a driver." *Id.* The court held that the government had failed to establish that the officer had probable cause or a reasonable suspicion that the defendant was violating the no-texting law, explaining that "a mere possibility of unlawful use [of a cell phone] is [not] enough to create a reasonable suspicion of a criminal act," and that "[a] suspicion so broad that [it] would permit the police to stop a substantial portion of the lawfully driving public is not reasonable." *Id.* at 1014-15 (internal quotation marks and citation omitted).

[10] Boogerd also makes the same argument he made in moving to dismiss Count One that the Court must credit "the public record" over Plaintiff's allegations regarding what the arresting officers knew or observed on the night of his arrest, and, in

### 4. GROUP PLEADING ISSUE

Boogerd next argues that Plaintiff improperly pleads group conduct against himself and Officer Karney such that he has not been given fair notice of the alleged wrongful conduct in which he allegedly personally engaged. *See* R. 32-1 at 9 (citing *Carter v. Dolan*, 2009 WL 1809917 (N.D. Ill. June 25, 2009), and *Liera v. City of Chicago*, 2014 WL 3921359, at *3 (N.D. Ill. Aug. 5, 2014)). To sustain a § 1983 claim, "'a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.'" *Johnson v. Snyder,* 444 F.3d 579, 583 (7th Cir. 2006) (citation omitted). In some cases, this principal may require dismissal of a complaint that relies on group pleading. *E.g., Liera,* 2014 WL 3921359, at *3 (dismissing claims "against an additional thirty-five police officers without alleging which officers were at which location or which officers participated in the alleged wrongful conduct" because "the Unspecified Defendants are not on notice of which actions they are alleged to have committed"); *Carter*, 2009 WL 1809917, at *3-4 (where plaintiff alleged that only three of the defendants actually entered her apartment, complaint failed to provide adequate notice to the other six defendants of their allegedly unconstitutional conduct).

---

particular, that the documents attached to his motion to dismiss prove that Plaintiff had a suspended driver's license. According to Boogerd, the suspended license also gave the police officers reasonable suspicion for a *Terry* stop. The Court again rejects this argument because it cannot say from the allegations of the complaint whether Boogerd knew about the suspended license at the time of the stop or only discovered it after he subjected Plaintiff to a field sobriety test, arrested him, and took him to the police station for charging. The Court also notes that while an invalid license might constitute probable cause to arrest Plaintiff, the Court does not see how it would provide reasonable suspicion for the *Terry* stop during which Plaintiff was administered a field sobriety test.

But in cases involving complaints against only a few defendants where the alleged facts plausibly suggest a basis for holding each of the defendants personally liable, motions to dismiss based on the group pleading argument have been rejected:

> We do not find it fatal to plaintiffs' complaint that they have failed to identify at this time the particular defendant or defendants who hit and kicked Rodriguez, pushed Gonzalez or carried out the other acts described in the complaint. Although this Court has in the past required plaintiffs to match incidents and defendants, we do not find the requirement appropriate in these circumstances when we can imagine that plaintiffs had no opportunity at the time of the incident to get to know the individual defendants.
>
> In addition, a defendant may not be able to escape liability for certain conduct simply because he did not physically act himself. Under certain circumstances, liability in a civil rights action can stem from the failure to intervene.
>
> We are required to construe pleadings liberally and will not dismiss for vagueness or lack of detail. . . . Although it may be that, as defendants argue, not all of the defendants were involved in every act, such as handcuffing Rodriguez, or that some of the defendants may avoid liability based on qualified immunity, these details are more appropriately addressed at a later proceeding.

*Gonzalez v. Babasa*, 2003 WL 21196245, at *2 (N.D. Ill. May 19, 2003) (citations omitted) (citing, among other cases, *Okoro v. Bohman*, 2001 WL 1098041, at *2 (N.D. Ill. Sept. 14, 2001) (allowing case against Chicago police officers and federal DEA agents to go to trial even though plaintiffs could not identify which defendant specifically engaged in which act and plaintiffs learned the names of the defendants only through discovery efforts)).

This case only involves two police officer defendants, both of whom appear from the allegations to have been present and involved in the conduct of which Plaintiff complains. Under these circumstances, it is at least plausible that both officers participated in and therefore may be held liable for the events that transpired in the McDonald's parking lot such that it would not be appropriate to dismiss the complaint for failure to identify the specific actions of each officer. *See Rivera v. Lake Cnty.*, 974 F. Supp. 2d 1179, 1199 (N.D. Ill. 2013) (distinguishing *Carter* because the plaintiff in that case "'was given the opportunity to identify the individual conduct of each Defendant Officer and failed to do so'" (quoting *Carter,* 2009 WL 1809917, at *3), and holding that "it would be unreasonable for this Court to expect more specific allegations until the parties have conducted discovery"); *Evans v. Tavares*, 2009 WL 3187282, at *2 (N.D. Ill. Sept. 30, 2009) (same).

### 5. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ("IIED")

Officer Boogerd adopts the argument previously made by the City in its first motion to dismiss that Plaintiff's claim for IIED (Count Four) should be dismissed based on Illinois' one-year statute of limitations. The Court declined to rule on this issue when it was presented on the first motion to dismiss because the City was not named as a defendant in Count Four. While Plaintiff does not respond to Boogerd's argument for dismissal of his IIED count, in response to the City's first motion to dismiss, Plaintiff argued that the two-year statute of limitations pertaining to actions "arising out of patient care," 745 ILCS 10/8-101(b), applied to his IIED claim. That argument was frivolous because Plaintiff does not allege any facts to

support a claim that he was a patient receiving medical care from the arresting police officers or the City of Naperville. *See Kaufmann v. Schroeder*, 946 N.E.2d 345, 349 (Ill. 2011) (an injury arises out of patient care "if the injury is causally connected to the patient's medical care and treatment"). The Court therefore agrees with Boogerd,[11] and will dismiss Count Four of the Second Amended Complaint.[12]

### 6.  FALSE IMPRISONMENT CLAIM

Boogerd next raises an argument previously addressed by the Court in its October 22, 2015 Order, which is that Plaintiff's § 1983 claim predicated on false imprisonment (Count Five) is duplicative of his § 1983 claims predicated on false arrest (Count One) and unlawful *Terry* stop (Count Two). But Boogerd does not cite any case law in support of his argument for dismissal of this Count. The Court therefore declines to rule on the issue at this time. *See Davis v. Carter*, 452 F.3d 686, 691-92 (7th Cir. 2006) (perfunctory and undeveloped arguments not supported by pertinent authority are waived).[13]

---

[11] Although Officer Fletcher has not made this argument in his motion to dismiss, the Court will dismiss Count Four as to both of the individual police officer defendants named in that count.

[12] Even if Plaintiff's IIED claim were not time barred, Plaintiff still fails to allege sufficient facts to support that claim. *See, e.g., Douglas v. Lofton*, 2013 WL 2156053, at *10 (N.D. Ill. May 17, 2013) (citing cases where IIED claims were dismissed at pleadings stage for failure to allege sufficiently extreme and outrageous conduct); *S.J. v. Perspectives Charter Sch.*, 685 F. Supp. 2d 847, 860 (N.D. Ill. 2010) (dismissing IIED claim where plaintiff failed to allege any specific facts demonstrating elements of IIED claim, especially the egregious conduct required).

[13] The Court also observes that Boogerd's argument that his initial encounter with Plaintiff was justified by the community caretaking rule lends further support to the view that the false imprisonment claim is not duplicative of the false arrest and/or *Terry* stop claims. The Illinois Appellate Court has held that "the police may

## 7.   INJUNCTIVE RELIEF

Officer Boogerd's final argument is that Plaintiff lacks standing to seek prospective inunctive relief. R. 32-1 at 13 (citing *Cadiz v. Kruger*, 2007 WL 4293976, at *10 n.9 (N.D. Ill. Nov. 29, 2007) (stating that, "in the typical excessive force case . . . a plaintiff would lack standing to seek prospective injunctive relief for a past event that (as to that plaintiff) has no foreseeable likelihood of recurring" (citing *City of Los Angeles v. Lyon*, 461 U.S. 95, 111 (1983))). The standing issue regarding injunctive relief is one that requires more analysis than a single citation to dicta in a 2007 district court case, which itself relies on a Supreme Court case from almost twenty years ago. Therefore, the Court declines to decide this issue at this time. *See Davis*, *supra*, 452 F.3d at 691-92.

## B.   OFFICER FLETCHER'S MOTION TO DISMISS

The only issue raised by Officer Fletcher in his motion to dismiss is whether Plaintiff's § 1983 claims against him are barred by the statute of limitations. "The

---

question a citizen without triggering fourth amendment protections during a 'community caretaking' encounter, so long as the officer does not convey by use of force or show of authority that compliance with his inquiry is required." *Robinson,* 859 N.E.2d at 243. "'Compelled compliance may be shown by: (1) the presence of several police officers; (2) the display of a weapon; (3) an officer's physical contact with the citizen; and (4) an officer's use of language or tone of voice commanding compliance." *Id.* (internal quotation marks and citation omitted). Plaintiff has alleged facts that plausibly suggest "compelled compliance," in violation of the community caretaking justification for the police officers' actions. Accordingly, Plaintiff's false imprisonment claim could be read as challenging this aspect of the police officers' encounter with Plaintiff. *See Carey v. K–Way, Inc.,* 728 N.E.2d 743, 747 (2000) (false imprisonment claim under Illinois law only requires that the plaintiff's liberty be restrained, not necessarily that the plaintiff actually be placed under arrest; this element is met if a person is compelled to go where he or she does not wish to go or to remain where he or she does not wish to remain).

statute of limitations is an affirmative defense, and a plaintiff is not required to negate an affirmative defense in his complaint." *Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993). "A complainant can plead himself out of court by including factual allegations that establish that the plaintiff is not entitled to relief as a matter of law. Thus, although a plaintiff need not anticipate or overcome affirmative defenses such as those based on the statute of limitations, if a plaintiff alleges facts sufficient to establish a statute of limitations defense, the district court may dismiss the complaint on that ground." *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015) (citations omitted).

"The limitations period for § 1983 claims is based in state law, and the statute of limitations for § 1983 actions in Illinois is two years." *Id.* (citations omitted). The events giving rise to Plaintiff's claims took place on May 26, 2013. Plaintiff filed this lawsuit on May 26, 2015, the same day on which the two-year statute of limitations was due to expire. But neither the Original nor the subsequently filed First Amended Complaint named Officer Fletcher as a defendant. Instead, the Original Complaint named "Naperville" as the only defendant, R. 1, and the First Amended Complaint named (1) the Naperville Police Department,[14] (2) Officer Boogerd, and (3) "John Doe Officers # 2 and #3," R. 10-1. Plaintiff did not identify Officer Fletcher by name until he filed the Second Amended Complaint on November 20, 2015. *See* R. 46. By this time, the statute of limitations had run. Therefore, Plaintiff's § 1983 claims against Fletcher are time-

---

[14] As noted, the Court later substituted the City of Naperville in place of the Naperville Police Department. *See* R. 23 at 2.

barred unless they can be saved through application of either the relation-back rule of Fed. R. Civ. P. 15(c) or equitable principles of tolling.

Fletcher argues that Plaintiff's § 1983 claims against him do not relate back under Rule 15(c) because of the "John Doe" relation-back rule in this circuit. This Court recently addressed a similar argument in *White v. City of Chicago*, 2016 WL 4270152 (N.D. Ill. Aug. 15, 2016). Interpreting the "mistake" language of Rule 15(c)(1),[15] this Court rejected the traditional John Doe-application of that language pursuant to which a plaintiff's lack of knowledge regarding a defendant's identity is not considered to be a "mistake" such that relation-back applies. *See, e.g., Jackson v. Kotter*, 541 F.3d 688, 696 (7th Cir. 2008). Instead, this Court held that, after *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010), the traditional John Doe rule should not be applied to prevent relation-back if a plaintiff seeks to determine the identity of the John Doe defendant before the statute of limitations expires but is unable to do so, provided that the newly identified defendant either knew or should have known that but for the plaintiff's inability to discover his identity he would have been named in place of the John Doe defendant. *See White*, 2016 WL 4270152, at *20. Moreover, this Court also held that even if relation-back under Rule 15(c) was not available to the plaintiff, factual questions may still be raised regarding

---

[15] *See* Fed. R. Civ. P. 15(c)(1) ("An amendment to a pleading relates back to the date of the original pleading when . . . the amendment changes the party or the naming of the party against whom a claim is asserted, if [among other things] the party to be brought in by amendment . . . knew or should have known that the action would have been brought against it, *but for a mistake* concerning the proper party's identity.") (emphasis added).

whether the doctrine of equitable tolling applies to prevent the running of the statute of limitations. *Id,* at *21-22.

This Court's ruling in *White* interpreting and applying the *Krupski* Court's analysis of relation back under Rule 15(c), and the doctrine of equitable tolling, requires the Court to deny Fletcher's motion to dismiss. The Court cannot conclude that Plaintiff has pled himself out of court on the statute of limitations. There are no factual allegations in the Second Amended Complaint demonstrating that Plaintiff knew Fletcher's identity prior to naming him as a defendant. Nor can the Court conclude based on the factual allegations of the complaint that Fletcher did not know *and* should not have known that but for Plaintiff's inability to discover his identity he would have been named as a defendant. In addition, numerous courts in this district have applied equitable tolling when a plaintiff has been unable to obtain the identity of the city official who harmed him and his claims otherwise would be barred. *See, e.g., Brown v. Deleon*, 2013 WL 3812093, at *7 (N.D. Ill. July 18, 2013). The Court notes that Officer Fletcher has not argued he was prejudiced by Plaintiff's failure to identify him any earlier than in the Second Amended Complaint. Nor can the Court determine based on the pleadings whether Plaintiff was or was not diligent in seeking Officer Fletcher's identity. For these reasons, a ruling on the issue of relation-back under Rule 15(c) and equitable estoppel would be premature. Accordingly, Officer Fletcher's motion to dismiss based on the statute of limitations is denied without prejudice to raising the issue later in the

proceedings after discovery has shed further light on the factual matters determinative of that issue.

## C.  THE CITY'S MOTION TO DISMISS AND MOTION TO STRIKE

### 1.  PLEADING *MONELL* CLAIM

Under *Monell v. Department of Social Services of the City of N.Y.,* 436 U.S. 658 (1978), a municipality "may be liable under § 1983 for constitutional violations caused by (1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with final policymaking authority." *Kristofek v. Vill. of Orland Hills*, 2016 WL 4245494, at *9 (7th Cir. Aug. 11, 2016) (internal quotation marks and citation omitted). Plaintiff implicitly advances his *Monell* claim under the second approach—an unofficial practice or custom that is widespread and well settled. The Court dismissed Plaintiff's *Monell* claim in the First Amended Complaint because Plaintiff had alleged in only a conclusory fashion that an unofficial practice or custom existed. Following fairly well established law in this circuit, the Court held that Plaintiff must allege facts from which an unofficial practice or custom plausibly might be inferred. Plaintiff has attempted to do so in the Second Amended Complaint. In re-pleading his *Monell* claim*,* Plaintiff has alleged, in addition to his conclusory assertions regarding the existence of an unofficial practice or custom,[16] the existence of at least two other

---

[16] Plaintiff's conclusory assertions of the existence of an unofficial practice of custom include allegations that: (1) the defendant police officers were acting under color of law when they fabricated a story to create probable cause to arrest him and seize his belongings in the McDonald's parking lot, R. 46 at 10 (¶ 70); (2) the City had a duty to properly supervise its employees and agents, and the City breached that

allegedly similar incidents, which Plaintiff argues suggest the existence of an

unofficial practice or custom sanctioned by the Naperville Police Department:

> In Case 1:15-cv-05052, filed in this very court the
> Naperville Police Department was sued for allegedly
> illegally searching and seizure of a home. In this
> complaint, Stephen Tracy has alleged similarly that the
> officer had no warrant, no consent to search and the
> occupant of the home had committed no crime.
>
> In case #2014CF1512, currently in the DuPage County
> Circuit Court, the Naperville Police has been accused
> again of illegal search and seizure. In this case,
> Mr. Anthony Giannone, a criminal defendant, in a motion
> to suppress hearing, has accused the Naperville Police of
> not only illegal search and seizure but also unlawfully
> confiscating items from a vehicle and requiring him to
> produce a receipt.

R. 46 at 11-12 (¶¶ 75-76).

The City argues that these additional allegations are insufficient to overcome

the pleading deficiencies identified by the Court in its earlier opinion for a number

of reasons. To begin with, the City argues, the alleged misconduct in the two other

incidents occurred after the incident involving Plaintiff and therefore are

---

duty by "[i]mproperly training, authorizing, encouraging or directing officers [ ] to
engage in impermissible searches and seizures, without reasonable suspicion or
probable cause and without sufficient legal basis, and/or condoning such actions,
based on hostility by law enforcement toward residents and specifically non-
residents of Naperville," *id.* (¶ 71); (3) the defendant police officers "acted consistent
with this training and in an unconstitutional manner when they continued to detain
Plaintiff after they had verified Plaintiff's identity," and, "[i]nstead of releasing
Plaintiff, searched [him], accused him of suspicion of DUI, arrested him, seized his
property illegally and brought him to the Naperville Police Station," *id.* at 11 (¶ 72);
and (4) the defendant police officers' conduct was done "pursuant to an unwritten
policy, custom or pattern of practice to engage in indiscriminately stopping,
detaining and citing individuals without probable cause by officers of the Naperville
Police Department," *id.* (¶ 74).

insufficient "to show the existence of an 'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights." R. 29-1 at 5 (quoting *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012)). The City asks the Court to look outside the complaint to make a factual finding that the other incidents occurred after the incident involving Plaintiff, which the Court declines to do. In any event, the City has not cited any relevant case law holding that to be legally sufficient for pleading purposes it is necessary that the other incidents have occurred prior to the incident of which the plaintiff complains. Instead, the City cites two district court cases that refer only generally to "prior patterns of similar misconduct," *Paroubek v. Friddle*, 1987 WL 7818, at *2 (N.D. Ill. Mar. 11, 1987), and "prior incidents similar in nature," *McBride v. Lindsay,* 1989 WL 234032, at *1 (N.D. Ill. Nov. 17, 1989). In neither case did the district court consider or decide whether allegations of later-occurring incidents were sufficient to *allege* an unofficial practice or custom, and, in fact, a sentence in *Paroubek* (which the City does not acknowledge) actually refers more broadly to "previous *or* similar incidents involving the plaintiff or others with similar experiences." 1987 WL 7818, at *2 (emphasis added).

While the *practice or custom* constituting an unofficial policy must have existed prior to the incident involving the plaintiff for it to have been a moving force behind the plaintiff's incident, that does not mean later occurring incidents can never be indicative of the existence of a pre-existing practice or custom. For instance, in *Hoskin v. City of Milwaukee,* 994 F. Supp. 2d 972 (E.D. Wis. 2014), the

court rejected a similar argument that the plaintiff "has failed to plead facts which establish that the complaints of other unlawful searches occurred before the subject incident." *Id.* at 981 (internal quotation marks and citation omitted). The court held that it was not "necessary for the plaintiff to have pled specifics like the time, place, or identity of the other complaints," and that "[g]eneral allegations that the City and MPD received complaints is enough to give rise to an inference that its officials had knowledge that other, similar illegal searches were occurring. *Id.* The Court agrees with these conclusions. The later timing of the other incidents in question does not necessarily negate the relevancy of those incidents to the question of whether an unofficial practice or custom existed prior to those incidents. The allegation that such later occurring incidents took place may contribute to the plausibility of Plaintiff's allegation that a practice or custom existed. Just how convincing the evidence might be as a matter of proof is an issue for later in the case.

The City next contends that Plaintiff's allegations of two other incidents are insufficient to state a *Monell* claim because they are unproven allegations against the City. The Court is not persuaded by this argument either. "Certainly, plaintiffs are allowed to bring § 1983 actions on the basis of complaints and allegations of police misconduct, if all other pleading requirements are met." *Markey v. City of Chicago*, 1991 WL 101639, at *2 (N.D. Ill. June 4, 1991) (citing *Williams v. City of Chicago*, 658 F. Supp. 147 (N.D. Ill. 1987), wherein the plaintiff survived the City's motion to dismiss a § 1983 claim with seven citizen complaints against police

officer); *see also Hoskin*, 994 F. Supp. 2d at 982 n.3 (rejecting the defendants' argument "that the plaintiff has not sufficiently pled facts to establish the City's knowledge because there were only complaints of unlawful searches, rather than final adjudications that the searches were unlawful," stating that "[t]his argument hardly justifies a discussion" because "[a] lack of formal adjudications would be a logical symptom of" the alleged policy of ignoring complaints about unlawful searches); *Alphabet v. City of Cleveland*, 2006 WL 3241785, at *15 (N.D. Ohio Nov. 7, 2006) ("To simply assume that the sustainment of a complaint by the City's Office of Professional Standards is necessary to render a complaint relevant, in light of Plaintiff's allegations, lacks reasonableness.").

In *Markey,* the district court distinguished *Strauss v. City of Chicago*, 760 F.2d 765 (7th Cir. 1985), wherein the Seventh Circuit rejected as improperly pled a *Monell* claim that depended on "general, unspecific, allegations of frequent 'illegal arrests.'" 1991 WL 101639, at *2 (quoting *Strauss*, 760 F.2d at 769). The *Strauss* court rejected the other allegations primarily because they were too general and unspecific, not because they were unproven. The City cites to *Torres v. Dart*, 2015 WL 4379890 (N.D. Ill. July 16, 2015), but that case is similar to *Strauss* in that the allegations rejected were too vague and unspecific. The *Torres* court deemed the allegations of other complaints "sketch[y]" not because the complaints alleged were unproven but because the plaintiff had not identified "[w]hat cases and what is alleged," concluding "[s]urely a reasonable inquiry would have uncovered maybe 'one or even three' names of the cases the plaintiff's complaint alludes." *Id.* at *4.

Although the information Plaintiff provides here about the two other cases is limited, he has at least identified the cases and what is alleged. His allegations of other incidents, therefore, survives the "sketchy" test in *Torres*.

The City's third and fourth arguments are that the allegations of the other two incidents as alleged by Plaintiff are not sufficiently similar to the alleged constitutional violation here, and that, in any event, two other incidents are not sufficient to establish an unofficial practice of custom or practice that is widespread and well settled. These arguments have a bit more force than the City's first two arguments. Nevertheless, given the stage in the proceedings at which these arguments are presented, the Court concludes that the City's arguments are not dispositive, and, as discussed below, will err on the side of allowing limited discovery on Plaintiff's *Monell* claim before ruling definitively on whether that claim may go forward.

The law in this area is a mixture of settled rules regarding the standard for finding municipal liability and unsettled views regarding what is required to get to the point where potential liability may even be considered. It is clear that a *Monell* claim cannot be based on a random event. Instead, it must be based on "a series of violations to lay the premise of deliberate indifference." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Jackson v. Marion Cnty.*, 66 F.3d 151, 152 (7th Cir. 1995)). "The Seventh Circuit has not adopted any bright-line rules for how many violations are required to lay the premise of deliberate indifference, "except that it must be more than one instance, or even three. The

general principle, however, is that the plaintiff must demonstrate that there is a policy at issue rather than a random event." *Karney,* 2015 WL 6407759, at *3 (internal quotation marks and citations omitted) (quoting *inter alia Thomas,* 604 F.3d at 303). But the Seventh Circuit's indication in *Thomas* of a possible threshold requirement of "more than . . . three" violations refers to a threshold for a finding of liability. *See Thomas*, 604 F.3d at 303 ("Beyond these threshold requirements, the jury must make a factual determination as to whether the evidence demonstrates that the [City] had a widespread practice that [caused] the alleged constitutional harm."). The question presently before the Court is whether the same threshold applies to the *pleading* of a *Monell* claim.

While the general rules of pleading are well established, their application to *Monell* claims is less so. In *McCormick v. City of Chicago*, 230 F.3d 319 (7th Cir. 2000), the Seventh Circuit noted that "[p]laintiffs' counsel, the defense bar, and district courts continue to struggle with this and other courts' pronouncements as to exactly what a plaintiff bringing a municipal liability suit must plead to survive a motion to dismiss—and with reason." *Id.* at 324. On the one hand, certain pre-*McCormick* cases held that a plaintiff cannot state a claim "by simply attaching a bare conclusion to the facts he narrates." *Id.* (quoting *Kyle v. Morton High School*, 144 F.3d 448, 455 (7th Cir. 1998)). On the other hand, other pre-*McCormick* cases held that a plaintiff "need not plead facts; he can plead conclusions." *McCormick,* 230 F.3d at 324 (quoting *Jackson*, 66 F.3d at 153-54). The *McCormick* court attempted to provide clarity on this issue by adopting the latter view. *McCormick,*

230 F.3d at 325. That view, the court said, was dictated by *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993), in which the Supreme Court "made it very clear that federal courts must not apply a heightened pleading standard in civil rights cases alleging § 1983 municipal liability." *McCormick*, 230 F.3d at 323; *see also Jackson,* 66 F.3d at 153 (district court overlooked *Leatherman* in requiring greater specificity in pleading of *Monell* claim). Thus, the *McCormick* court concluded, the plaintiff could allege the factual basis of his or her *Monell* claim through an allegation of a widespread custom or practice, because "[s]uch an allegation, while conclusory, is sufficient to put the City on notice of [the plaintiff's] claim against it." *Id.* at 325.

Despite the Seventh Circuit's attempt in *McCormick* to clarify the standards for pleading a *Monell* claim, uncertainty to this area of the law resurfaced after the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Some district courts in this circuit continue to cite to *McCormick* as the proper pleading standard for a *Monell* claim, notwithstanding *Twombly* and *Iqbal*. *See, e.g., Howard v. Sheriff of Cook Cnty.*, 2016 WL 4366598, at *3 (N.D. Ill. Aug. 16, 2016) (Zagel, J.); *Wade v. Rizzuto*, 2016 WL 1247472, at *6 (N.D. Ill. Mar. 30, 2016) (Lefkow, J.); *Othman v. City of Chicago*, 2012 WL 5246898, at *4 (N.D. Ill. Oct. 23, 2012) (Dow, J.); *Sanders v. Sheehan*, 2010 WL 2990121, at *2 n.1 (N.D. Ill. July 26, 2010) (Gottschall, J.); *see also Ohlrich v. Village of Wonder Lake*, 22 F. Supp. 3d 874, 877-78 (N.D. Ill. 2014) (Reinhard, J.) (not citing *McCormick* but declining to dismiss complaint with only conclusory

allegation of custom or practice). But the Seventh Circuit's decision in *McCauley v. City of Chicago*, 671 F.3d 611 (7th Cir. 2011), seems to suggests otherwise. In *McCauley,* the Seventh Circuit held that to properly plead a *Monell* claim, a plaintiff must "plead factual content that allows the court to draw the reasonable inference that the [defendant] maintained a policy, custom, or practice" that contributed to the alleged violation. *Id.* at 618 (quoting *Iqbal*, 556 U.S. at 678). This Court applied *McCauley* in its ruling on the City's first motion to dismiss. *Karney*, 2015 WL 6407759, at *3-4. Nevertheless, at issue on the City's first motion to dismiss was the adequacy of conclusory *Monell* allegations without any attempt to support those allegations with specific facts. At issue here is whether the two other incidents alleged in the Second Amended Complaint are sufficient to get Plaintiff over the *Iqbal* and *Twombly* pleading threshold.

While *Iqbal* and *Twombly* direct the Court to disregard a naked allegation of a policy, practice or custom, nothing in those cases requires the Court to adopt a numerical rule for *Monell* claims. Instead, on a Rule 12(b)(6) motion to dismiss, the inquiry is limited to whether the plaintiff has pled sufficient factual content— whether it is other complaints or incidents, the specific facts of the plaintiff's case, some other evidence, or a combination of some or all of those things—that renders plausible the plaintiff's conclusion that there is an informal practice or custom for which the municipality may be held liable. In assessing plausibility, moreover, it seems appropriate to keep in mind that it is unlikely Plaintiff would have access to information about other incidents without discovery. *See Chambers v. City of S.*

*Beloit*, 1990 WL 32659, at *3 (N.D. Ill. Feb. 5, 1990) ("Often plaintiffs lack even the information necessary to meet the minimal pleading requirements of § 1983 until they are allowed the opportunity for some discovery."); *Means v. City of Chicago*, 535 F. Supp. 455, 460 (N.D. Ill. 1982) ("We are at a loss as to how any plaintiff, including a civil rights plaintiff, is supposed to allege with specificity prior to discovery acts to which he or she personally was not exposed, but which provide evidence necessary to sustain the plaintiff's claim, i.e., that there was an official policy or a de facto custom which violated the Constitution."). In *Leatherman,* the Supreme Court held that "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." 507 U.S. at 168-69. The Seventh Circuit noted in *McCormick* that the *Leatherman* approach to pleading a *Monell* claim was consistent with its own circuit law, which holds that a plaintiff "need not allege all, or any of the facts logically entailed by the claim," that a plaintiff "does not have to plead evidence," and that a complaint does not "fail to state a claim merely because it does not set forth a complete and convincing picture of the alleged wrongdoing." *McCormick,* 230 F.3d at 323 (internal quotation marks and citations omitted).

The Court finds that it is a close question whether Plaintiff's *Monell* allegations are sufficient in this case. On the one hand, Plaintiff has attempted to rise above a "formulaic, bare-bones" *Monell* claim of the type that is "routinely dismiss[ed]" in this circuit. *Foster v. Land*, 2016 WL 3971699, at *3 (N.D. Ind. July 25, 2016) (citing cases). On the other hand, of the two other incidents alleged in the

Second Amended Complaint, at least one appears to be only marginally similar in that it involves an unlawful search of an apartment as opposed to a motor vehicle. If Plaintiff's *Monell* claim is that the City is liable because it does not adequately train its police officers to conform their behavior to the requirements of the Fourth Amendment, the Court does not find that claim to be very plausible based on the current allegations. As the City points out, such a *Monell* claim would require a larger number of similar constitutional violations before deliberate indifference based on failure to train could be inferred. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train.").

But in addition to conclusory failure-to-train allegations, Plaintiff also alleges an unofficial practice or custom of condoning "impermissible searches and seizures, without reasonable suspicion or probable cause and without sufficient legal basis, . . . based on hostility by law enforcement toward residents and non-residents of Naperville." R. 46 at 11 (¶ 73). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  On balance, the Court concludes that the allegations of the factual circumstances surrounding Plaintiff's encounter with the arresting officer when he was found by them asleep at 3:30 a.m. in the parking lot of a local McDonald's restaurant, together with the additional allegations of two other lawsuits alleging unreasonable search and

seizures against City police officers, are barely enough for Plaintiff's *Monell* claim of condoning illegal search and seizures based on hostility by law enforcement towards individuals, in circumstances similar to Plaintiff's, to survive dismissal. *See, e.g., Wade*, 2016 WL 1247472, at *6 n.8; *Ohlich,* 22 F. Supp. at 878.

This is not to say that the door is completely open on the matter of the City's role, if any, in what happened to Plaintiff. Given the weak allegations in support of *Monell* liability, the Court will limit Plaintiff's discovery on his *Monell* claim to records kept by the City (or the Naperville Police Department) of lawsuits, complaints, reports, or investigations (internal or external) made to, filed with, or concerning Naperville police officers and/or the Naperville Police Department which allege unlawful searches or seizures made without probable cause for a period going back three years prior to the incident in question. *See Foy v. City of Chicago*, 2016 WL 2770880, at *1 (N.D. Ill. May 12, 2016) (ordering limited discovery on other similar incidents prior to considering adequacy of plaintiff's latest attempt to plead a *Monell* claim). Should this discovery provide additional support for Plaintiff's *Monell* claim, then he may bring that additional support before the Court by way of a motion to pursue his *Monell* claim through further discovery.

### 2.    MOTION TO STRIKE PLAINTIFF'S PRAYER FOR RELIEF

The City moves to strike portions of Plaintiff's prayer for relief on the ground that it cannot be held liable for punitive damages or attorney's fees, and that injunctive relief would be inappropriate in this case. The Court addressed the issue of injunctive relief in the context of Officer Boogerd's motion to dismiss, and adopts

the same ruling here. Insofar as punitive damages and attorney's fees are concerned, the Court declines to strike Plaintiff's prayer for those forms of relief to which Plaintiff may be entitled as against one or more of the other defendants in this case. The City's arguments that it (as opposed to either of the officer defendants) cannot be held liable for punitive damages or attorney's fees are preserved for later proceedings in the case.

## CONCLUSION

For the foregoing reasons, (1) the City's Motion to Dismiss and Motion to Strike, R 29, is denied; (2) Officer Fletcher's motion to dismiss, R. 33, is denied; and (3) Officer Boogerd's motion to dismiss, R. 32, is granted as to Count Four of the Second Amended Complaint and denied in all other respects. Defendants are directed to file a joint status report on or before October 28, 2016. A status hearing is set for November 1, 2016 at 9:00 a.m.

ENTERED:

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: October 18, 2016